Hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this honorable court may now draw near and they will be heard. God save the United States and this honorable court. Good morning to everyone, counsel and my colleagues. It's a privilege to be with you again as we open court for our January court week. We have continued to hear cases by this virtual forum as opposed to our ability to assemble together in physical presence. This has proven to be a workable alternative, though not ideal and certainly not what we would prefer to be in the same place. But this is working and we appreciate counsel's support. With that, Madam Clerk, would you call the first case for the morning? Yes, Your Honor. Case number 19-3405, United States v. Barrett Prelogar. All right. Mr. Guilfand? Thank you, Your Honor. Good morning and may it please the court. In 2018, the United States acquitted Barrett Prelogar in 17212A, the only count of conviction, by adding two elements, a nexus element and a specific targeted proceeding element. In this case, the grand jury that returned the indictment never found probable cause for these two elements because they were not alleged in any way, shape or form in the indictment. Mr. Guilfand, did the Supreme Court call those items elements? Did they refer to them as elements or could they be construed as being additional proof requirements but not necessarily being elements of the offense itself? Your Honor, the Supreme Court did not use the word elements. However, this court in the Beckham decision expressly used the word elements. The 11th Circuit in December of 2020 returned a case, published an opinion called Graham, also using the word elements. And the U.S. Supreme Court, even though it didn't use the word elements in the Marinello decision itself, expressly stated that elements are constituent parts of a crime that the prosecution must prove to sustain a conviction in the Southern Union Company case. And so as a practical matter, when all of these things are considered, the nexus requirement and the specific targeted administrative proceeding requirement should be considered elements that have to appear in the indictment. It's important to recognize, Your Honor, that in this case, count two of the indictment not only does not use the words nexus or administrative proceeding, but in no way, shape or form even suggests what, for example, administrative proceeding would even be applicable to the allegations in count two of the indictment. So this is... Counsel, I have a follow-up question to Chief Judge Smith's about elements. How does this square with a case like Rahafe, where the Supreme Court did a similar thing in saying you have to, the government has to prove some additional information, which is the knowledge. And yet I don't think that any court has said that that had to be included in indictment by a grand jury. Do you consider that to be a similar type of situation as what we have here? Your Honor, I don't. And the reason why is because if the court looks at the Rahafe case law involving essentially the knowledge elements and the status element regarding possession of a gun, for example, that's a different situation than what we have here because what we have here are essentially reigning in the scope of a statute as opposed to further defining the mens rea of that statute based on statutory interpretation. And what's particularly important in this case is that by adding these two elements, regardless of whether the Supreme Court calls them elements, it literally limits the scope of the kind of conduct that this particular statute, section 7212A, can actually cover. So I think it's a different situation, Your Honor. I think furthermore, as a practical matter, it's important to recognize that when the courts use terms like elements, in other words, when Beckham used the word elements, that was not broad or imprecise language, as the government suggests. And the reason why is because this court's analysis in the Beckham case, which is the first and I believe the most significant post-Marinello case, obviously, other than this case because Marinello was only decided in 2018, the court's analysis applying Nader harmless error review presupposes necessarily that elements were omitted from the offense. In other words, the court's analysis, the opinion in Beckham, regardless of whether it uses the word elements, makes no sense if elements were not omitted in that case from the jury instructions in light 7212A. And so post-Marinello, it really only makes sense to consider that what the Supreme Court was saying in Marinello referred to elements. This notion that there's a category of facts that the government concedes must be proven beyond a reasonable doubt, that are somehow not elements that need to be submitted to the grand jury, I think really strikes at the heart of violating the Fifth Amendment grand jury. Well, I get that as an argument, but how do you square that with post-Aguilar cases? You know, like United States versus Colas out of the Sixth Circuit or Sussman out of the Third Circuit. I realize our courts never addressed it, but there are all kinds of post-Aguilar cases that talk about the indictment not requiring to plead the nexus. Why are they wrong? First of all, I do believe that those cases do not adequately recognize the Fifth Amendment grand jury protection, but this court doesn't need to go that far to find in Mr. Prelogger's favor in this case, because those 1503 cases post-Aguilar are interpreting essentially a similar statute, but not an identical statute. That statute uses the words due administration of justice versus due administration of the internal revenue laws. Those did not have binding precedent in those circuits like Beckham in this circuit that expressly recognized that these are elements, and correctly so. Beckham is not an outlier. Graham in the Eleventh Circuit just last month confirms that. Furthermore, what's interesting about the post-Aguilar cases is those particular cases, Your Honor, actually they don't use the word nexus, and the court is right that some district courts acknowledged that essentially they didn't have to be alleged in the indictment, but those cases do expressly allege specific proceedings that further give the defendant notice. For example, the government refers to PERC. The government refers to TRIUMPH. Those cases, and those are not outliers, expressly allege a grand jury investigation being obstructed. This indictment, on the other hand, if the court looks to count to, makes no reference in any way, shape, or form to any administrative proceeding, targeted or otherwise, and that's a significant distinction. It's not that this court necessarily has to separate itself from these post-Aguilar cases, although I do think that the Southern District of Ohio's explanation in the Agbazian case, if I'm pronouncing that correctly, really recognizes this important distinction between the Fifth Amendment grand jury right and essentially instructional error type cases, and so I think that that's particularly important. What's further important here is that these particular quote-unquote corrupt acts that are alleged in the indictment have no nexus whatsoever to a pending targeted administrative proceeding. And on that— Well, what about actions or activities like attempted garnishments and efforts to collect? Can those qualify as proceedings? Your Honor, I don't believe so. I believe that those would fall into the routine tax collection activities that apply to millions of taxpayers on a given day post-Maranillo, and I think the Adams Court in the District of Columbia recognizes that those are considered remedies after some sort of proceeding or investigation basically had already occurred, so there was nothing to obstruct. But I think what's more important, Your Honor, here is that with respect to at least one of the theories, the third act, Mr. Prelogger's cashing his own collections activity. It all ended before the beginning of that time period, before March of 2013. That's a fact the government does not dispute—correctly so in this case—and the civil statute of limitations foreclosed subsequent collections activity, so an administrative proceeding was not reasonably foreseeable. The reason that that matters is because what this means—and to be clear, we believe the other acts are also insufficient—but what this means is that even if those kinds of collections activities that are general and ubiquitous routine tax administration activities would fall within the scope of the statute, it can't fall within the scope of the statute here when by the government's own admission there was no ongoing collections activity. This matters because the Supreme Court said that the specific proceeding has to be pending at the time of the conduct or reasonably foreseeable. That's on page 1110 of the Marinello decision, and there's nothing pending. The government admits that, and there's nothing—Counsel, would the referral to the criminal arm of the Internal Revenue Service count as administrative proceeding? Your Honor, I don't believe so for two reasons. First of all, the government did not advance that theory in any way, shape, or form at trial, and second of all, there's no evidence, even in the light most favorable to the government, that these kinds of acts—for example, cashing one's paycheck when one doesn't have a bank account—could somehow impede or obstruct a criminal investigation. That was never suggested by the government. There's no evidence that would support that. There was no testimony or evidence at trial about how that could have even had any impact about the criminal investigation. So in theory, Your Honor, a criminal investigation, of course, could be a targeted administrative proceeding. A civil audit could be a targeted administrative proceeding. But when the court looks at the facts of this case and what was actually alleged and established at trial, this whole cashing paychecks concept doesn't apply. Furthermore, the first two acts—use of corporate funds to pay, quote-unquote, personal expenses, secured creditors, and, quote-unquote, structuring cash withdrawals from a corporate account—the government acknowledges there was never any collections activity on the corporation, which was Wintec or WDS, sometimes referred to in the transcript. The government's not even alleging that there was a nexus to the corporation and any sort of collection activity, because there was no collection activity towards the corporation. In fact— I want to just go back. I mean, I get that the corporate activity is different, but I want to go back to what Judge Kelly was talking about and your favorite case, Graham, which appears to describe the activities that may give rise as including anything that's beyond the day-to-day work of the agency and goes on to talk about that they've got no difficulty finding targeted administrative action when they find notices, liens, assignment of revenue officers who are investigating, searching, and preparing for seizure and sale of his property. And wasn't all this still going on? And isn't that part of the criminal investigation? Your Honor, some activity was going on, but there was no targeted administrative collections activity going on after the civil statute of limitations legally prohibited any such collections activity. And I think that's the distinction. In Graham, the defendant in that case walked into an IRS office and handed basically a, quote-unquote, tax protester, you know, document, a check, so to speak, a false check, with a lien, literally an IRS notice, attached to it, which is a far cry from going to one's own bank and cashing one's own paycheck at a time when, by the way, Mr. Prelogger pays more to the IRS than he cashes in paychecks. And so I think that that's a far cry. But I would also point the Court's attention to footnote one in Graham as to the first issue, which emphasizes that the defendant in that case actually filed a nearly identical motion to dismiss the indictment in this case. And the government, instead of back to the grand jury and correctly superseded to correct the Maranello problem, the government did in that case in the 11th Circuit acknowledge what we believe the Fifth Amendment required in this case. I see that I'm going into my rebuttal time, and if I may reserve the rest of my time for rebuttal, Your Honor. Certainly, you may. Mr. Coppe? I find it's better when I unmute my microphone. I'm sorry about that. Hey, please, the Court, I assume you can hear me? Yes. Yes, thank you. With respect to the question of the sufficiency of the indictment, Mr. Gelfand mentions the Graham case. We could have superseded the indictment in this case. That is true. But that's not the issue with the case. The issue is whether or not the indictment adequately alleged the constituent elements of the offense. We believe that they did. We believe that all of the case law that we have cited supports that. We don't believe that Beckham is to the contrary. Let's start out by pointing out that I don't the statute. In almost every case involving sufficiency of an indictment, the courts have held that where your indictment tracks the language of the statute, you're going to be good. Now, as far as the nexus requirement is concerned, and the Court has already mentioned this, this issue arose in the Aguilar cases where the Supreme Court decided that there was a necessary nexus requirement that previously had not been held to exist. And 25 years have passed since that decision. There hasn't been a single case that has required the government to prove that particular nexus issue. I should also point out that with respect to this particular case, Marinello, and we cite the cases, there hasn't been but one case, an unpublished district court case out of Alaska, I believe, that has held that we need to do that. Now, that case was settled. The fed had pleaded guilty, so there was no point in, or there was no availability for the government to appeal that case. Before I go any further, one of the cases that I cite in my case, in my brief, rather, from Hawaii, it's called U.S. versus, I think it's Gurgis, G-U-I-R-G-U-I-S. That case is under submission before the appeals court. I noticed it was taken under submission in October, and it has this precise issue in it. I was reading their brief last night. I see that our briefs are very similar in terms of citations of cases and whatnot. It does cite one case that is not in our brief, which I will give to this court through a 28-J letter. It is a case out of the Seventh Circuit, United States versus Khan, K-H-A-N. What it talks about is, it says, and this is what I think we have here, an implicit allegation of an element of a crime is enough. The indictment need not specifically allege every component part of the offense. That's really what they're saying here, that we have to specifically allege every component part of the offense. Now, let's talk about Beckham for a second. Beckham does refer to these as adding new elements. Now, we know that only Congress can do that. The Supreme Court doesn't add elements to a case. What it can do is define what you need to prove those particular elements. The court asked Mr. Gelfand about Beckham and whether or not that would be relevant. He says no, because he says in Marinello, we narrowed the scope of the statute. But think about it. That's exactly what we did in Beckham. The court in Beckham basically says, you need to know more than that you simply possessed the weapon. You need to know that you had the status that made the possession of that weapon illegal. It narrowed the universe of individuals who were subject to prosecution. And yes, Beckham called them elements, but let's get back to the Rehafe cases for a moment. There are Rehafe cases from this court. I know Justice Roberts pronounced it Ruh-heef, but whichever. There are cases from this court in Rehafe that have said these are elements. Now, I think it's much like the term jurisdiction. The courts over the years, this court, the Supreme Court, has noted that jurisdiction means different things depending on the context. And when we're talking about elements that need to be alleged in an indictment, we're not necessarily talking using that word in the same fashion when we're talking about verdict directing instructions. We're talking about facts that have to be proven beyond a reasonable doubt to the jury to basically support the charge. Beckham, you know, reversed the case for further proceedings. If Beckham had felt that those were necessary elements, it would have reversed on that basis, but it did not. And in the Rehafe case, we cite Rehafe situation, rather, one of the cases that's, I think, very pertinent is the Jauher case cited at page 25 of our opinion. That's a case where the court seems to recognize that Jauher is a, that the requirement of status be proven is an element in the sense that it must be proven to the jury, but not an element in sense that it I have a question about that. And one of the, the Supreme Court made it clear that in Maranello that there needed to be a proceeding, administrative proceeding in action or reasonably foreseeable to the defendant. And the indictment doesn't allege any or identify any administrative proceeding. Is that, isn't that significant? I would say, I don't know, not significant enough to, not significant enough to find that the indictment is insufficient. No, because it talks about that's basically how you show that there was an obstruction or an impediment to an IRS collection activity. No, I do not think that's any more significant than, like I said, the Aguilar cases where you have to show that you impeded the administration of justice. Basically, again, these are facts that we have to prove, but they're not something that we have to allege. We don't have to allege the specifics of how the crime was committed. So I don't think, I mean, it's a distinction, but I don't think it's a meaningful distinction. So what facts show that there was ongoing administrative procedures? Well, the facts that show that, and that's our argument on page 37, we list the various things. All we need to show here is that there was an investigation and or some sort of targeted proceedings against him. And on page 37, we list all of these things. I don't want to go read them for you. I know the court is capable of doing that himself, but we're talking about notices of liens. We're talking about actions taken against Wintec, levying the wages he had to. We seized one of his vehicles that he was driving. I mean, there was a long list. I mean, this went beyond a mere investigation. These were numerous. We list seven, plus his corporate and personal CPA, David Emmerich, got a collection due process notice directed to him, telling him that the IRS was doing everything. And remember, these levies, these liens, they were still in effect. It's true that at some point, the IRS suspended actively trying to collect monies. They moved this into the criminal realm. But to respond to Judge Kelly's question, yeah, I think, you know, if you're talking about a targeted investigation, what could be more targeted than, you know, a criminal investigation? And a criminal investigation includes not only prosecution, but it also includes, obviously, restitution. And he's taking actions that are going to prevent us, or at least are designed to prevent us, from collecting the monies that are owed and due. I mean, the structuring of withdrawals that were obviously designed, and there was that email that he sent that basically saying, I'm lying low here. I'm trying to keep as out of sight as I can so that the IRS can't collect from me. He knew that this was more than just the routine. I heard Mr. Gelfand say, this is just a routine IRS activity. But the case law, and again, he says we're relying on pre-Maranello case law, but we're relying primarily on Sixth Circuit case law, which had already adopted the Maranello standard. It was really the only circuit. And so those cases, I think, are very persuasive when they speak in terms of what do you need to show in terms of IRS activity. And this is... Once the statute of limitations ran on the trust fund amount or the recovery amount, then are you only relying on the criminal investigation as the pending or reasonably foreseeable administrative proceeding at that point? No, because I think that they were also, and the record will show if I'm wrong or not, but they were also seeking reimbursement for his personal liabilities as opposed to this trust fund. So he also owed personal taxes to the IRS, which is one of the reasons they were going against trying to take his wages. And that's why he stopped receiving automatic deposits. I think Mr. Gelfand said he had no checking account, but I think the record shows his checking account was always there. At some point, it had a negative balance, but no. Was that evidence presented at the trial? Then there was evidence presented to the jury that there was activity to collect on the personal taxes owing? I believe so, yes. Now, Mr. Gelfand can correct me if I'm wrong, but I believe that's true. There was liability in terms of his personal liability. There was also a liability in terms of the funds that should have been sequestered for the IRS and the trust fund and basically were never sequestered or were used. So again, the idea that filing all of these liens, seizing property, that this is ordinary activity under Marinello, I think that's fanciful. I think Marinello is talking about precisely the kind of activities that were an issue here. What would be the ordinary kind of IRS activity that Marinello would say is not? Yeah, they talked about that, Your Honor, and it's basically what they talked about is processing income tax returns. Anytime you start getting notices of deficiency and notices that at least liens and levies and seizures of property, I mean, that's obviously investigative. That's obviously targeted activity, and that's exactly what Marinello is saying was covered. They're saying routine, just processing. In other words, if you file late, for example, or you don't file at all, that is probably not going to fall within the Marinello boundaries. But this obviously went well beyond what are routine activities. The Sixth Circuit case that we cited, I think it's minor, that says filing liens and levies is not the kind of routine activity that is taken against the average taxpayer. Again, if you look at all of the things that happened here, he was the subject of an IRS investigation that was ongoing. These liens and levies, he said we stopped trying to collect. They're still outstanding. They were never withdrawn, and clearly he was attempting to avoid those collection activities, which I think is precisely the kind of activity that Marinello basically says that does fall within the scope of the statute here. I may be leaving something out. I see I've got a minute and a half left, but I think two things here. Number one, the indictment, clearly sufficient. We don't have to allege every component part of a particular element. I think the case law is clear when you're relying solely on an unpublished district court case from Alaska as your authority. And again, getting back to the case that Mr. Gelfand cited in his 28-J letter, that simply was a case where, as I said, the government just decided to cover their bases. It's like, why bother to do that? I would point out that in the rehalf cases, the government is now alleging the status. We don't believe we have to. The case law says we don't have to, but we do it to avoid these sort of problems and these sort of arguments. But it's not a concession by any means, nor should be interpreted as that, that we believe that it is an element that we have to allege in the indictment. Well, to what degree is this panel bound by the language in our own case that uses the elements terminology? In this context, Judge, I see my time is out. Not at all. Because what we're saying is, and I can't make this point any more forcefully, what they're talking about when they talk about elements in an instruction is different than what they're talking about when they refer to elements in an indictment. And I think the cases of this make that clear. Thank you, Mr. Coffey. Mr. Galfin, your rebuttal. Thank you, Your Honor. Mr. Coffey used the phrase, you're going to be good if the indictment tracks the language of the statute. And I could not disagree more. As the United States Supreme Court said in Carl, C-A-R-L-L, it's not sufficient to set forth the offense in the words of the without any uncertainty or ambiguity, set forth all the elements necessary. And so I think, Judge Kelly, to answer your question that you asked Mr. Coffey, that's very significant. Because there's no reference in the indictment to the existence of any collections activity. There's no reference in the indictment to the existence of a criminal investigation. There's no suggestion that this had some nexus, each particular alleged, corrupt act to anything. The government argues that there's not a single case post-Aguilar, which came down in 1995, that basically supports our premise. But the reason why, Your Honor, is because the government, like Henry Haith, is actually indicting 1503 cases correctly now, just like they're indicting 7212A cases. So while I acknowledge that that may not be a concession, that these are elements, the government's own actions are avoiding these precise issues. The government in this case decided to double down. What's particularly interesting is that in the Westbrooks case, a similar argument, the sufficiency of the indictment, was raised in a cert petition to the U.S. Supreme Court post-Maranello. The U.S. Supreme Court, without opinion, reversed back to the Fifth Circuit. And then the government itself conceded on the other issue, essentially the Maranello issue that we've raised on the Rule 29 issue. The government conceded that because there's at least one theory that falls outside the scope of Maranello, then as a practical matter, there's essentially one theory that requires reversal under Hedgepeth. And so Westbrooks, Graham, Beckham, to suggest that this court's language in Beckham was just so careless and haphazard, and this court should just ignore a published, well-thought-out decision from 2019 post-Maranello by a panel of this court that took the decision very seriously, I think this court should reject outright. The final thing I'd like to just briefly mention is this suggestion that the Seventh Circuit case the government cites, where they're going to write a 28-J letter, changes the game. It doesn't. That case, as the court will see, actually establishes a specific proceeding in the 1503, I'm sorry, in the context. It establishes specificity that count two in this indictment doesn't. So I think what you asked, Judge Kelly, is the ball game. I think the absence of it is what matters. So we would ask this court to dismiss the indictment or the alternative to grant a judgment of acquittal. Thank you. Thank you, Mr. Gilfin. Thank you also, Mr. Coppe. The court appreciates both counsel's participation in the argument today and the briefing which you've submitted. We will continue to read and study and we'll do the best we can with the issues. Counsel may be excused.